IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 81644-6-I |
| DOMANIQUE JAMAL MOORE | DIVISION ONE |
| Respondent. | UNPUBLISHED OPINION |

ANDRUS, A.C.J. — In 2010, Domanique Moore pleaded guilty to first degree murder and second degree assault after killing one person and encouraging an accomplice to shoot another. Moore challenges his sentence, arguing that the trial court did not conduct a meaningful, individualized inquiry into the mitigating factors of his youth, as required under State v. Houston-Sconiers, 188 Wn.2d 1, 391 P.3d 409 (2017). Because Moore has not demonstrated actual and substantial prejudice, we deny his personal restraint petition.

FACTS

In December 2008, Moore, age 17, and a 15-year-old friend, LaMonte Owens, planned to rob 19-year-old Steven Jackson during a drug transaction. When Jackson did not have the amount of marijuana that Moore wanted, Moore shot Jackson twice in the back of the head. Robert Taylor, who accompanied

Citations and pin cites are based on the Westlaw online version of the cited material.

Jackson, attempted to flee following the shooting. Moore directed Owens to shoot Taylor as he fled. Owens shot and wounded Taylor.

The State originally charged Moore with one count of first degree murder and one count of attempted first degree murder, both with firearm enhancements. According to the State, under the Sentencing Reform Act of 1981 (SRA),[1] Moore faced a sentence of between 546 and 692 months had he been convicted of these two charges.

In exchange for his guilty plea, the State reduced the attempted first degree murder charge to second degree assault and dropped the firearm enhancement. The State identified the applicable sentencing range under the plea to a period of incarceration of between 321 and 407 months and indicated it intended to request a high end sentence. Moore agreed he would not seek an exceptional sentence below the standard range.

At the 2010 sentencing hearing, the State recommended a high end standard range sentence. Moore requested a low end standard range sentence because of his youth and immaturity. Moore's counsel argued that he had good qualities and a caring family, and that his crime could only be explained by his youth and immaturity. Counsel also let the court know that he tried to elicit information from Moore's family to present at sentencing but "it has been hard to pull that out." Moore's counsel highlighted the fact that Moore was only 17 at the time of the crime and urged the court to consider that this was an "immature crime" and that he would "grow out of this phase" as he ages. Moore's grandmother

---

[1] Chapter 9.94A RCW.

spoke at the hearing and reiterated how shocked the family was, that Moore was wrong for what he had done, and that he was demonstrating maturity in acknowledging what he did was wrong. Moore himself informed the court that he was immature, "not thinking in the right mind," and "was easily influenced in life by other people." Moore reiterated this during his allocution, telling the court

> I do acknowledge that what I did changed a lot of people, everyone in this courtroom's life, you know. . . . It is a choice, a decision that just altered everyone's life by immaturity and just not thinking in the right mind, just being a person that was easily influenced in life by other people. Just when I should have been listening to my mom and going to school, I just did what I wanted to do.

While the trial court agreed that Moore was young and immature, it nevertheless felt that "this was a senseless murder that I think none of us would ever understand." The court explained its reasoning in sentencing

> So the issue for me is, do I give you a bit of a break and reduce it somewhere in the lower [to] middle end of the range, or do I take into consideration the desires of the victim's family with respect to where you should be sentenced in the range? Given what happened, I see no reason to do anything other than respect the victim's family wishes and I will impose the top of the range and the mandatory 60-month enhancement.

The court imposed a high end sentence of 407 months in confinement.

Seven years later, in 2017, our Supreme Court decided Houston-Sconiers, holding that "[b]ecause 'children are different' under the Eighth Amendment," sentencing "courts must consider mitigating qualities of youth at sentencing and must have discretion to impose any sentence below the otherwise applicable SRA range and/or sentence enhancements." Id. at 21 (citing Miller v. Alabama, 567 U.S. 460, 486, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)).

In July 2020, Moore filed a CrR 7.8 motion in the superior court asking to be resentenced under Houston-Sconiers. The trial court transferred Moore's CrR 7.8 motion to this court for consideration as a personal restraint petition.

## ANALYSIS

A. Houston-Sconiers Error

Moore contends he is entitled to resentencing under Houston-Sconiers.[2] In a personal restraint petition, this court will grant relief to a petitioner who is subject to an unlawful restraint. RAP 16.4(a). The restraint is unlawful if it violates the Constitution of the United States or the Constitution or laws of the State of Washington. RAP 16.4(c). "Relief by way of a collateral challenge to a conviction is extraordinary, and the petitioner must meet a high standard before this court will disturb an otherwise settled judgment." In re Pers. Restraint of Coats, 173 Wn. 2d 123, 132–33, 267 P.3d 324 (2011). To obtain relief through a PRP based on a constitutional error, a petitioner must show two things: (1) a constitutional error occurred and (2) the error resulted in actual and substantial prejudice. In re Pers. Restraint of Williams, 198 Wn.2d 342, 353, 496 P.3d 289 (2021).

---

[2] The State initially argued that this PRP was untimely under RCW 10.73.090. A petitioner is generally barred from filing a PRP "'more than one year after [their] judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.'" In re Pers. Restraint of Meippen, 193 Wn.2d 310, 315, 440 P.3d 978 (2019) (quoting RCW 10.73.090(1)). But our Supreme Court concluded that Houston-Sconiers is a significant change in the law requiring retroactive application. In re Pers. Restraint of Domingo-Cornelio, 196 Wn.2d 255, 263, 474 P.3d 524 (2020), cert. denied sub nom. Washington v. Domingo-Cornelio, 141 S. Ct. 1753, 209 L. Ed. 2d 515 (2021), In re Pers. Restraint of Ali, 196 Wn.2d 220, 233-35, 474 P.3d 507 (2020), cert. denied sub nom. Washington v. Ali, 141 S. Ct. 1754, 209 L. Ed. 2d 514 (2021). It further concluded that this change in the law "is material to adult standard range sentences imposed for crimes the defendant committed as a child." Domingo-Cornelio, 196 Wn.2d at 265. Because Moore was sentenced to an adult standard range sentence for crimes committed when he was under the age of 18, Houston-Sconiers is material to his case. Moore's petition is therefore timely under RCW 10.73.100(6).

Moore argues the trial court committed constitutional error by not considering the mitigating qualities of his youth or by failing to appreciate it had the discretion to deviate from the standard range or from the firearm enhancement as now required by Houston-Sconiers. We conclude the trial court did consider the mitigating qualities of Moore's youth at sentencing but it did not appreciate it had the absolute discretion to deviate from the SRA in sentencing a juvenile offender.

In Houston-Sconiers, our Supreme Court held "sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant, even in the adult criminal justice system." Houston-Sconiers, 188 Wn.2d at 21. In exercising this discretion, sentencing courts must consider

> age and its "hallmark features," such as the juvenile's "immaturity, impetuosity, and failure to appreciate risks and consequences." It must also consider factors like the nature of the juvenile's surrounding environment and family circumstances, the extent of the juvenile's participation in the crime, and "the way familial and peer pressures may have affected him [or her]." And it must consider how youth impacted any legal defense, along with any factors suggesting that the child might be successfully rehabilitated.

Id. at 23 (citations omitted) (quoting Miller, 567 U.S. at 477) (alteration in original). This discretion is the "absolute discretion to depart as far as they want below otherwise applicable SRA ranges and/or sentencing enhancements." Id. at 9.

Moore first argues that the sentencing court did not "fully and meaningfully" consider Moore's individual circumstances in determining whether his youth diminished his culpability for the crime he committed. The record does not support this contention.

Here, defense counsel highlighted that Moore's crime was influenced by his immaturity and his susceptibility to peer pressure and argued that his crime was a "wrong path" he went down as "part of his youth, part of his immaturity." He further urged the court to consider his good qualities and his ability to rehabilitate as he "grow[s] out of this phase." Counsel appears to have had a difficult time obtaining information from Moore's family about the nature of his surrounding environment and family circumstances, although he indicated he had tried to do so. Moore directly addressed the court to explain that his actions were the result of his immaturity and the effects of peer pressure.

The court acknowledged Moore's youth, immaturity and the influence peer pressure may have had but nevertheless deemed the crime to be "senseless." The court also recognized it had the discretion to "give [Moore] a bit of a break and reduce" the sentence, but opted not to do so "[g]iven what happened." This record demonstrates the trial court did consider the mitigating qualities of Moore's youth in a meaningful way.

The sentencing court, however, would have been unaware that it had absolute discretion to depart from the SRA, including the statutory firearm enhancement because the law in 2010 did not confer this level of discretion. Even if the trial court appreciated it had discretion to impose an exceptional sentence below the standard range, it would not have known it could deviate from what it identified as the "mandatory 60-month enhancement." Moore has established that a Houston-Sconiers error occurred because the trial court did not appreciate its discretion to deviate from the SRA, including the firearm enhancement.

B.      Actual and Substantial Prejudice

Moore contends that a Houston-Sconiers error, by itself, establishes presumptive prejudice on collateral review. We reject this argument.

First, the Supreme Court has clearly indicated that to prevail in a collateral attack, a petitioner must show both a constitutional error and actual and substantial prejudice. State v. Buckman, 190 Wn.2d 51, 60-61, 409 P.3d 193 (2018); Meippen, 193 Wn.2d at 315. To accomplish this, the petition must show more than the mere possibility of prejudice, "but that the outcome 'would more likely than not have been different had the alleged error not occurred.'" Meippen, 193 Wn.2d at 315-16 (quoting In re Pers. Restraint of Hagler, 97 Wn.2d 818, 825, 650 P.2d 1103 (1982)).

The Supreme Court reiterated that standard in In re Pers. Restraint of Domingo-Cornelio, 196 Wn.2d 255, 474 P.3d 524 (2020), cert. denied sub nom. Washington v. Domingo-Cornelio, 141 S. Ct. 1753, 209 L. Ed. 2d 515 (2021). "A petitioner must demonstrate by a preponderance of evidence that he was actually and substantially prejudiced by the constitutional error in order to obtain relief on collateral review." Id. at 267. In that case, the court did state that "[u]nless the court meaningfully considers youth and knows it has absolute discretion to impose a lower sentence, we cannot be certain that an adult standard range was imposed appropriately on a juvenile under Houston-Sconiers." Id. at 268. But this statement arose in a very different factual context.

In Domingo-Cornelio, there were minimal references to the defendant's age during his sentencing hearing and the sentencing court chose to impose a low end

SRA sentence, rejecting the State's request for a high end sentence. 196 Wn.2d at 261. Here, neither defense counsel nor the court were silent regarding Moore's youthfulness. Defense counsel argued and the court acknowledged that Moore's crime was influenced by his youth and immaturity. The sentencing court considered these mitigating qualities, considered a low end sentence, as urged by Moore's counsel, and deemed that sentence inappropriate. There is no evidence to suggest that the court was willing to consider a lower sentence for Moore.

This case is also distinguishable from In re Pers. Restraint of Ali, 196 Wn.2d 220, 233-35, 474 P.3d 507 (2020), cert. denied sub nom. Washington v. Ali, 141 S. Ct. 1754, 209 L. Ed. 2d 514 (2021). In Ali, defense counsel requested an exceptional sentence based on the mitigating circumstances of Ali's youth. Id. at 243. The sentencing court then stated that it was imposing the lowest sentence it had discretion to order. Id. at 244. The Supreme Court concluded that Ali had demonstrated actual and substantial prejudice because "it appears more likely than not, the judge would have imposed a lower sentence had she understood that the Eighth Amendment requires absolute discretion to impose any sentence below the standard range based on youthful diminished culpability." Id. at 245.

Although the sentencing court here, as in Ali, was unaware that it had complete discretion to disregard an otherwise mandatory firearm enhancement, it rejected Moore's contention that any sentence other than a high end standard range sentence was appropriate because of the "senseless" nature of the crime and the impact it had on the victim's family.

Moore's case is more analogous to Meippen, 193 Wn.2d at 310. In that case, defense counsel argued that the defendant's youthful age and immaturity warranted a low-end standard range sentence; the sentencing court disagreed, stating that Meippen's behavior was "cold, calculated, and showed complete indifference towards another human being." 193 Wn.2d at 313. It explicitly rejected a low end SRA sentence and imposed a sentence at the high end of the standard range. Id. Our Supreme Court concluded that the defendant did not establish prejudice because he failed to show "by a preponderance of the evidence that his sentence would have been shorter if the trial court had absolute discretion to depart from the SRA at the time of sentencing." Id. at 312.

Like the sentencing court in Meippen, the court here rejected Moore's arguments that his age and immaturity warranted a low-end standard range sentence. The court knew it had the discretion to impose a lesser sentence—and expressly considered that sentence—but chose a different sentence based on the circumstances of the crime. Had the sentencing court deemed the firearm enhancements excessive, it could have reduced the standard range sentence to mitigate the impact of these enhancements. It chose not to do so which indicates the court concluded a shorter sentence was inappropriate.

Moore contends the trial court would not have considered the crime "senseless" if it had the benefit of modern knowledge regarding juvenile brain development. While it is theoretically possible that a presentation on brain science could have convinced the sentencing court to impose a different sentence, "mere possibilities do not establish a prima facie showing of actual and substantial

prejudice." 193 Wn.2d at 317. This record does not support Moore's contention that the trial court would have imposed a shorter sentence. Under these circumstances, he has not demonstrated actual and substantial prejudice.

Second, none of the Supreme Court's opinions discussing the "actual and substantial prejudice" standard in the context of a Houston-Sconiers error, including Domingo-Cornelio, arose in the context of a negotiated plea agreement in which the juvenile offender relinquished the right to seek a sentence below the standard range. Moore entered into a plea agreement with the State in which, in exchange for a reduced charge, he stipulated that he would not seek any sentence other than a standard range sentence.[3] In bargaining for this leniency, Moore waived his right to seek an exceptional sentence based on future changes in the law, including Houston-Sconiers.

A plea agreement functions as a contract in which the defendant exchanges his guilty plea for some bargained-for concession from the State. State v. Barber, 170 Wn.2d 854, 859, 248 P.3d 494 (2011). The concession may be the State's agreement to drop a criminal charge, to reduce a charge, or to make a sentencing recommendation. Id. Juvenile offenders, like adult offenders, are entitled to enter into plea agreements. State v. Sledge, 133 Wn.2d 828, 839 n.6, 947 P.2d 1199 (1997). In this case, the State agreed to amend the information to allege Moore committed second degree assault, rather than attempted murder with a firearm.

---

[3] We recognize that Moore's plea paperwork indicated that the trial court did not have to follow anyone's sentence recommendation and could impose a sentence outside the standard range if it found a substantial and compelling reason to do so. But the trial court stated at the sentencing hearing that it found a low end standard range sentence to be inappropriate and a high end sentence to be more appropriate. It is clear from these comments that, plea agreement notwithstanding, this court would not have sentenced Moore to a lower sentence and he cannot demonstrate actual and substantial prejudice.

The result of this concession was a substantial reduction in the standard range sentence.

In exchange for this concession, Moore waived the right to request an exceptional sentence in a plea agreement, a valid option for him. State v. Lee, 132 Wn.2d 498, 506, 939 P.2d 1223 (1997). The fact that the law changed after Moore entered his plea does not render the deal Moore struck involuntary. "[A] voluntary plea of guilty intelligently made in light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." Brady v. United States, 397 U.S. 742, 757, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970); see State v. Lamb, 175 Wn.2d 121, 129, 285 P.3d 27 (2012) (juvenile offender could not withdraw guilty plea based on a change in the law that occurred after the entry of his plea; "whether the defendant was sufficiently informed of the direct consequences of the plea that existed at the time of the plea.").

Moore waived the right to seek any sentence other than a standard range SRA sentence, he received a sentence consistent with his plea agreement, and given the trial court's rejection of a low end sentence, Moore has not demonstrated actual and substantial prejudice from any Houston-Sconiers error.

C. Additional Issues

Moore challenges his sentence on several other grounds but none are supported by the record before us.

1. Exceptional Sentence

Moore argues the trial court imposed an exceptional sentence in excess of the statutory maximum and the State violated RCW 9.94A.537(1) when it failed to give him proper notice of its intention to seek an exceptional sentence. But the statutory maximum sentence for first degree murder is life in prison. See RCW 9A.20.021; RCW 9A.32.030(2). Moore did not receive a life sentence. Nor did he receive an exceptional sentence. Moore's standard sentencing range for the first degree murder conviction was 261 to 347 months. Sixty months was added to this range because Moore used a firearm in the commission of the crime. RCW 9.94A.533(3)(a). Moore was sentenced to 407 months, within this standard range.

2. Offender Score

Moore contends his offender score was incorrectly calculated and asserts that his score should have been zero, rather than seven. But Moore's offender score was actually two, not seven. And it was correctly calculated.

An offender score is a numeric representation of previous and current criminal history and is calculated according to a point accrual system devised by the legislature. See RCW 9.94A.525. For the purposes of calculating the offender score for one offense, other current offenses are treated as prior offenses. RCW 9.94A.589(1)(a). Because he was convicted of two violent felonies which did not encompass the same conduct, each offense counted as two points as to the other count. See RCW 9.94A.525. His offender score was correctly calculated.

3.  Right to a Jury Trial

Next, Moore argues that his sentence violated his Sixth Amendment right to a jury trial. But he explicitly waived this right in his plea statement. The constitutional right to a jury trial may be waived. State v. Forza, 70 Wn.2d 69, 70, 422 P.2d 475 (1966); State v. Brand, 55 Wn. App. 780, 785, 780 P.2d 894 (1989). While a written waiver "does not conclusively show that a defendant validly waived a jury trial," Moore makes no argument that this waiver was invalid, and there is no evidence in the record suggesting as much. Brand, 55 Wn. App. at 788. Thus, there was no error.

4.  Ineffective Assistance of Counsel

Finally, Moore argues that he received ineffective assistance of counsel at his sentencing.

A defendant in a criminal proceeding is guaranteed the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 684-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Defense counsel's obligation to provide effective assistance applies at sentencing. State v. Phuong, 174 Wn. App. 494, 547, 299 P.3d 37 (2013). To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient and (2) that the deficient representation prejudiced the defendant. State v. Grier, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Deficient performance occurs when counsel's performance cannot be attributed to any conceivable legitimate tactic. Id. at 33. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the

circumstances." In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).

Moore contends his counsel failed to argue that his age was a mitigating factor during sentencing. This is unsupported by the record. Defense counsel requested a sentence at the low end of the standard range expressly due to Moore's youth and immaturity. Moore has not demonstrated that his counsel was deficient.

We deny Moore's personal restraint petition.

_Andrus, A.C.J._

WE CONCUR:

_Coburn, J._      _Bruman, J_